David J. McGlothlin, Esq. (17389 UT)
david@kazlg.com
**KAZEROUNI LAW GROUP, APC**
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Ryan L. McBride, Esq. (16218 UT)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **Cari Johnson, individually and on behalf of others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**RANLife, Inc.,**<br><br>Defendant. | **Case No.:**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.;**<br><br>**JURY TRIAL DEMANDED** |

1

## INTRODUCTION

1. Plaintiff, Cari Johnson ("Plaintiff"), brings this action against RANLife, Inc. ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

2. This is a putative class action pursuant to 47 U.S.C. § 227 *et seq*.

3. Defendant RANLife, Inc. is a mortgage company operating out of the State of Utah. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took

place in the District of Utah.

8. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

## JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA

jurisdiction are present.

11. Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides in Utah and is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Utah and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Utah.

## PARTIES

12. Plaintiff is a natural person residing in the City of Orem, State of Utah.
13. Defendant RANLife, Inc. is a company based in Sandy, Utah, that offers home loan and mortgage lending services, and other general real estate services.

## THE TCPA

14. The TCPA prohibits any person or entity from initiating two or more telephone solicitations, in any 12-month period, to a residential telephone subscriber whose number is registered with the National Do Not Call registry.[1]

15. As such, the TCPA facilitated the creation and "operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3).

16. Congress empowered the Federal Communications Commission ("FCC") to issue rules and regulations implementing the TCPA.

17. The FCC recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

18. In 2012, the FCC issued an order tightening the restrictions for telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.[3]

---

[1] 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)
[2] *Id*.
[3] *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).

5

19. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature such that plaintiff had "'clear and conspicuous disclosure' of the consequences of providing the requested consent…and having received this information, [Plaintiff] agree[d] unambiguously to receive such calls at a telephone number the [plaintiff] designate[d]."[4]

20. This Court and the Supreme Court have clarified that text messages are considered calls under the TCPA.[5]

21. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[6]

22. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.[7]

---

[4] *Id*. at ¶ 33.
[5] *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1181 (D. Utah 2021).
[6] 47 C.F.R. § 64.1200(f)(12)
[7] See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015)

6

23. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."[8]

24. The FCC defined telemarketing as calls motivated in part by the intent to sell property, goods, or services.[9] This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.[10]

25. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.[11]

26. If a call is not deemed telemarketing, the defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.[12]

27. The United States Court of Appeals for the Ninth Circuit held that "[u]nsolicited telemarketing phone calls or text messages, by their nature,

---

[8] *Id*. at 820; (citing 47 C.F.R. §§ 64.1200(a)(2)(iii); 64.1200(f)(12)); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14098 ¶ 141 (2003)).

[9] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd 14014 ¶¶ 139-142 (2003).

[10] *Id*.

[11] *Id*. at ¶ 136.

[12] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

7

invade the privacy and disturb the solitude of their recipients."[13] Thus, "[a] plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'"[14]

### GENERAL ALLEGATIONS

28. At all times relevant, Plaintiff was an individual residing within the State of Utah.

29. At all times relevant, Defendant's principal place of business was in the State of Utah.

30. Plaintiff added her phone number to the National Do Not Call Registry on November 14, 2019.

31. Defendant is required to check the National Do Not Call Registry before attempting to call or text.[15]

32. Plaintiff uses her phone number for residential purposes, such as speaking with friends and family.

33. On July 2, 2022, at 9:58 PM, Plaintiff received a text message solicitation from (801) 331-8304. The message stated:

---

[13] *Van Pattern v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017)
[14] *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)).
[15] 47 U.S.C. §§ 227(c)(3)(F)

8

> Hi Cari. Are you a first-time homebuyer and if so would it be helpful for me to send over my best tips for first-time homebuyers? Michael Carter

34. Plaintiff did not respond.

35. On July 15, 2022, Plaintiff received another text message solicitation from (801) 331-8304. The message stated:

> Hi Cari. We recommend using our Mortgage Calculator to estimate your costs before getting pre-approved. https://utahbuymyhome.com/mortgage-calculator

36. Plaintiff did not respond to the second message.

37. On August 14, 2022, Plaintiff received a third text message solicitation from (801) 331-8304. This message stated:

> Hi Just a quick reminder to reach out when you see a listing or have questions. Properties are going really fast Michael https://utahbuymyhome.com/listing

38. Two minutes later, Plaintiff responded and told Defendant to "Stop texting."

39. On September 13, 2022, Plaintiff received a fourth text message solicitation from (801) 331-8304. The message stated:

> Hi there Let me know if you are interested in learning more about off-market listings and or new construction. I can send you more info. Michael Carter

40. Plaintiff wrote back, "Stop."

9

41. On October 8, 2022, Plaintiff received a fifth text message solicitation from (801) 331-8304. The message stated:

> Hi Cari. Need help connecting to any one of these through your home search process? Lenders Attorneys Inspectors etc?? Michael Carter.

42. Plaintiff, for the third time, told Defendant to "Stop."

43. On November 7, 2022, at 10:45 PM, Plaintiff received a sixth text message solicitation from (801) 331-8304. The message stated:

> Hi Cari. Just checking in on your must haves. Let me know what is most important to you and we can customize your property alerts. Michael Carter.

44. For the fourth time, Plaintiff told Defendant to "Stop."

45. Defendant identifies "Michael Carter" as an Associate Broker/Realtor on its website.[16]

46. The two websites in the text messages link back to Defendant's website.

47. Defendant's text messages constitute telephone solicitation because they encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to sell Plaintiffs home lending and other real estate services.

---

[16] https://michaelc.ranliferealestate.com/; (last accessed 5/15/2025)

10

48. Defendant sent the text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls or text messages to individuals residing within this judicial district and throughout the United States.

49. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

50. Two of Defendant's text message solicitations occurred after 9:00 PM, in violation of 47 C.F.R. § 64.1200(c)(1).

51. Despite Plaintiff's inclusion in the National Do Not Call registry, Defendant sent Plaintiff text message solicitations at least six times within a 12-month period, in violation of 47 C.F.R. § 64.1200(c)(2).

52. Additionally, Defendant failed to adhere to Plaintiff's repeated requests for the solicitations to stop, in violation of 47 C.F.R. § 64.1200(d).

53. Defendant's unsolicited text messages caused Plaintiffs actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

54. Defendant's text messages also inconvenienced Plaintiff and caused disruption to their daily life.

55. Furthermore, Defendant's text messages took up memory on Plaintiff's cellular phones. The cumulative effect of unsolicited text messages like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

56. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

57. Plaintiffs bring this case on behalf of Classes defined as follows:

<u>The National DNC Class</u>

All persons within the United States who received two or more telemarketing phone calls or texts within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant first call or text, and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

<u>The Internal DNC Class</u>

All persons within the United States who received a telemarketing phone call or text from Defendant after ten days of said person's request for Defendant to stop contacting them.

<u>The Afterhours Class</u>

12

> All persons within the United States who received a telemarketing phone call or text message from Defendant before 8:00 AM or after 9:00 PM.

58. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

59. Upon information and belief, Defendant has placed telemarketing calls and texts to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

60. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

61. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

13

(a) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones;

(b) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(c) Whether Defendant's conduct was knowing and willful;

(d) Whether Plaintiff and the putative class members' phone numbers were on the national do-not-call registry at the time Defendant called;

(e) Whether Defendant made calls or sent texts before 8:00 AM or after 9:00 PM;

(f) Whether Defendant is liable for damages, and the amount of such damages; and

(g) Whether Defendant should be enjoined from such conduct in the future.

62. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls or sent text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical

claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

63. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## ADEQUACY

64. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and have retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

65. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is

remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

66. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I

NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(C)

ET SEQ.

(ON BEHALF OF PLAINTIFF AND THE CLASSES)

67. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

68. Pursuant to 47 U.S.C. § 227(c)(5), a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may,

if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

    (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

    (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

    (C) both such actions.

69. Furthermore, if a court finds that Defendant willfully or knowingly violated the regulations, the court may, in its discretion, increase the amount of the award by a factor of three (i.e., $1,500).

70. Defendant—or third parties directed by Defendant—made non-emergency telephone calls and texts to the telephones of Plaintiff and members of the putative Classes.

71. These calls were made without regard to whether or not Plaintiff or class members were on the National Do Not Call Registry. In fact, Defendant did not have prior express consent to call or text the cell phones of Plaintiff and the other members of the putative Class when its texts were made.

72. Defendant made these calls and texts outside of the allowable timeframe (between 8:00 AM and 9:00 PM), in violation of 47 C.F.R. § 64.1200(c)(1).

73. Defendant also failed to adhere to Plaintiff and putative class members' requests for Defendant to stop contacting them, in violation of 47 C.F.R. § 64.1200(d).

74. Defendant has, therefore, violated § 227(c)(5) of the TCPA by making, or directing a third party to make, two or more non-emergency telephone calls to the phones of Plaintiff and the other members of the putative Class without their prior express written consent.

75. Defendant knew that it did not have prior express consent to make these calls especially since Plaintiff repeatedly told Defendant to stop contacting her. The violations were therefore willful or knowing.

76. As a result of Defendant's conduct and pursuant to § 227(c)(5) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation and a maximum of $1,500 in statutory damages for willful violations. Plaintiff and the class are also entitled to an injunction against

future calls including an order requiring Defendant to display the correct calling number. *Id*.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the other members of the Class, prays for the following relief:

   a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

   b. An injunction prohibiting Defendant from calling telephone numbers on the national do-not-call registry without the prior express consent of the called party;

   c. An order naming Plaintiff the class representative;

   d. An order naming Plaintiff's counsel as class counsel;

   e. An award of actual and statutory damages;

   f. Treble damages; and

   g. Such further and other relief the Court deems reasonable and just.

### TRIAL BY JURY

77. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.

Dated: 6/3/2025                    Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE
RYAN L. MCBRIDE, ESQ.
Attorney for Plaintiff